NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS C. MOULTRIE, : | Civil Action No. 07-1195 (GEB) |
| Plaintiff, : | |
| v. : | **O P I N I O N** |
| JOSEPH W. OXLEY, et al., : | |
| Defendants. : | |

APPEARANCES:

    Thomas C. Moultrie, Plaintiff pro se
    Northern State Prison
    #59303
    168 Frontage Road
    Newark, NJ 07114

RECEIVED

MAY 1 0 2007

AT 8:30_____M
WILLIAM T. WALSH
CLERK

BROWN, Chief Judge

    Plaintiff Thomas C. Moultrie, currently confined at the Northern State Prison, Newark, New Jersey, seeks to bring this action in forma pauperis and alleges violations of his constitutional rights pursuant to 42 U.S.C. § 1983.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(a), and order the Clerk of the Court to file the complaint.

    At this time, the Court must review the complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to

state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that Plaintiff's denial of medical treatment and denial of telephone usage claims will proceed.  All other claims will be dismissed, without prejudice.

### BACKGROUND

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  The following facts are taken from Plaintiff's complaint and are assumed true for purposes of this review.

Plaintiff names 40 defendants in this civil rights action. His complaint exceeds 100 handwritten pages, and he attaches almost 300 pages of exhibits to the complaint.  The gist of Plaintiff's complaint concerns conditions of confinement while he was housed at the Monmouth County Correctional Institution ("MCCI") during the period from May 19, 2005 to October 2005.

Plaintiff states that on May 19, 2005, upon his arrival to MCCI, he was handcuffed, shackled, and "assaulted" by officers (Complaint, pp. 61-63).  Plaintiff provides no details of the assault, the names of the officers who actually committed the assault, or any injuries sustained therefrom.  He was next strip searched and his dentures and glasses were taken and not returned during his stay at MCCI.  (Complt., pp. 63, 90).

2

On May 23, 2005, Plaintiff was moved to protective custody due to a history of mental disorders.  He received notice of the custody classification on June 2, 2005.  Plaintiff states that he did not receive a classification hearing, (Complt., pp. 64-66); however, he later states that on August 9, 2005, he attended his *second* in-person classification hearing where he signed a medical release form (Complt., p. 69).  Plaintiff complains that he was housed in protective custody without justification, that he received no mental health treatment while in protective custody, and that he should have been housed at the mental health wing of the MCCI.   (Complt., pp. 66-68, 70, 88, 92-93).  Currently, he is housed at the "Mental Health Needs Unit" at the Northern State Prison (Complt., p. 69).

Besides Plaintiff's complaint regarding his housing status, Plaintiff makes the following complaints concerning his stay at MCCI: without detail, Plaintiff states that he was subject to a "long pattern of abuse," and "torture" (Complt., p. 71); he was not served food under clean conditions and was not served a prescribed low-salt diet (Complt., pp. 72-73, 84); he was denied legal and personal phone calls while housed in protective custody (Complt., pp. 73, 84); he was arbitrarily moved from cell to cell, and certain cells were dirty and unsanitary (Complt., pp. 73-74, 83-84); he was not provided shower slippers which resulted in a rash on his feet (Complt., pp. 75, 77); he was only provided

3

one pair of underwear and one tee-shirt during his stay at MCCI (Complt., p. 76); without detail, Plaintiff states that he was psychologically damaged (Complt., pp. 78, 80-81); without detail, Plaintiff states that there were assaults committed on other protective custody inmates (Complt., p. 79); there was a delay in signing grievance forms (Complt., pp. 81-82); MCCI was unsanitary, trash and spoiled food remained in his cell (Complt., pp. 83-84); without detail, Plaintiff states that he was denied medical treatment and social services while in protective custody (Complt., pp. 88-89); he was not permitted to conduct interviews or attend religious services (Complt., pp. 88-89); and he was denied showers, access to the linen exchange, proper recreation, and television use (Complt., pp. 84, 86, 91).

## DISCUSSION

### A.   Standard of Review

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).  Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996).  A crucial part of the

4

congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants.

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice. See Alston v. Parker, 363 F.3d 229 (3d Cir. 2004); Denton v.

Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State
Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to
28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17
(3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1));
Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d
Cir. 1996).

**B.   Section 1983**

A plaintiff may have a cause of action under 42 U.S.C.
§ 1983 for certain violations of his or her constitutional
rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff
must demonstrate that the challenged conduct was committed by (1)
a person acting under color of state law and (2) that the conduct
deprived him of rights, privileges, or immunities secured by the
Constitution or laws of the United States.  See Parratt v.
Taylor, 451 U.S. 527, 535 (1981), overruled in part on other
grounds by Daniels v. Williams, 474 U.S. 327 (1986); Adickes v.
S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v.
Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

6

C. **Plaintiff's Claims**

The Court liberally construes the complaint as asserting the following claims: excessive force by corrections officers; unconstitutional housing resulting in lack of medical treatment by the facility; and unconstitutional conditions of confinement, in violation of the Eighth and Fourteenth Amendments.

D. **Certain Defendants Will Be Dismissed.**

To begin, Plaintiff names five defendants in this action, but states that they "in no way what-so-ever violated plaintiff's constitutional rights." He states that he names these five officers to "show cause that there still 'remains' such Correctional Custody Officers as [these officers] who qualify as 'white shirt' officer[s] in charge, if Monmouth County Correctional Institution implement[ed] this position back in place." (Complt., pp. 54 (Diadone), 55 (Tucker), 56 (Davis), 57-58 (Adorino), 59 (Taylor)).

Because Plaintiff asserts that defendants Diadone, Tucker, Davis, Adorino, and Taylor did not violate his constitutional rights, these officers will be dismissed from this action, with prejudice.

E. **Plaintiff's Excessive Force Claims Will Be Dismissed, Without Prejudice.**

Plaintiff alleges that he was "assaulted" and that he was denied medical treatment. He offers no facts surrounding his

7

allegations; rather, he concludes that his rights have been violated.

Plaintiff asserts general causes of action against the defendants, without describing any specific incidents.  Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  While a plaintiff "need not plead facts," so long as the complaint meets the notice pleading requirements of Rule 8, see Alston v. Parker, 363 F.3d 229, 233-34 and n.6 (3d Cir. 2004), a complaint must plead facts sufficient at least to "suggest" a basis for liability, Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004) (clarifying Alston).

In this case, Plaintiff makes conclusory allegations that unnamed officers assaulted him.  Despite the prolixity of the complaint, Plaintiff does not plead sufficient facts with regard to these causes of action to suggest a basis for liability against any of the named defendants.

To state a claim under the Eighth Amendment, an inmate must allege both a subjective and an objective component.  See Wilson v. Seiter, 501 U.S. 294 (1991).  The subjective component requires that the state actor possess a particular state of mind because only the "unnecessary and wanton infliction of pain" implicates the Eighth Amendment.  See id. at 297; see also

Estelle v. Gamble, 429 U.S. 97 (1976).  The test used in determining whether the state actor possessed the requisite state of mind is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citation omitted).  The objective component requires that "the deprivation [be] sufficiently serious." Wilson, 501 U.S. at 298.

Thus, to set forth a valid claim for the use of excessive force under the Eighth Amendment, a plaintiff must demonstrate that "officials applied force maliciously and sadistically for the very purpose of causing harm, or . . . that officials used force with a knowing willingness that [harm] occur." Farmer v. Brennan, 511 U.S. 825, 835-36 (1994) (internal quotation marks and citations omitted).

Plaintiff does not allege any facts indicating an excessive force claim in his complaint.  Rather, he flatly refers to being "assaulted" upon his arrival at MCCI.  Therefore, this claim must be dismissed, without prejudice.[1]

---

[1]  The Court notes that it is unclear whether or not Plaintiff was held as a pretrial detainee while housed at the MCCI.  The Court finds, however, that analyzing Plaintiff's claims under the pretrial standard annunciated in Bell v. Wolfish, 441 U.S. 520, 535 (1979)(holding that in analyzing whether a pretrial detainee's conditions of confinement violate due process, the proper inquiry "is whether those conditions amount to punishment of the detainee"), Plaintiff nonetheless fails to allege sufficient facts in this pleading.

**F.   Plaintiff's Housing Claim Will Be Dismissed, Without
      Prejudice.**

Plaintiff claims that he was improperly housed in protective
custody for no valid reason besides mental disorders (Complt.,
pp. 65, 68).  Plaintiff was placed in protective custody at MCCI
from May 23, 2005 until September or October 2005, without mental
health treatment.  Plaintiff alleges that MCCI had a mental
health wing, but he was not placed there.

Exhibits attached to Plaintiff's complaint demonstrate that
Plaintiff was placed in protective custody based on "past/present
disciplinary history," "violent/assaultive behavior," and "need
for protective custody."  He was considered a danger to the
safety of himself and others and had an "explosive personality
and is anti-social." (Exhibit C).  According to the exhibits
attached to the complaint, his status was reviewed on May 24,
2005 (Exhibit C), June 14, 2005 (Exhibit D), June 21, 2005
(Exhibit E), June 28, 2005 (Exhibit H), August 2, 2005 (Exhibit
J), August 9, 2005 (Exhibit I), and September 6, 2005 (Exhibit
L).  On September 6, 2005, the Classification Committee was
"waiting for documentation from M.H. regarding the justification
for keeping this inmate in [protective custody] status."[2]

With respect to convicted and sentenced prisoners, "[a]s
long as the conditions or degree of confinement to which the

---

[2]   The Court assumes that "M.H." refers to "Mental Health."

prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in  Hewitt v. Helms, 459 U.S. 460, 468 (1983) and Sandin v. Conner, 515 U.S. 472, 480 (1995).  It is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular custody level or place of confinement.  See, e.g., Olim v Wakinekona, 461 U.S. 238, 245-46 (1983); Hewitt, 459 U.S. at 466-67; Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye, 427 U.S. at 242.

Governments, however, may confer on prisoners liberty interests that are protected by the Due Process Clause.  "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest).

Plaintiff's allegation that he has been deprived of liberty without due process by virtue of his protective custody classification, which he does not allege is otherwise violative of the Constitution or any liberty interest conferred by the State of New Jersey, fails to state a claim.

**G.    Plaintiff's Medical Treatment Claims Will Proceed.**

Plaintiff claims that he was improperly placed in protective custody, where he received no medical treatment or mental health treatment, despite the knowledge of jail staff that Plaintiff suffered from multiple and serious mental health issues.

Plaintiff's custody reviews, as outlined above, repeatedly evidence that Plaintiff had been requesting to be seen in "M.H.," but they have not seen him (Exhibits I, J, K, L). An exhibit to the complaint demonstrates that Plaintiff suffers from the following problems: antisocial personality disorder, malingering, suicide by medicinal NOS, hypertension, hyperlibidemia, tobacco use disorder, cardiac extrasystoles, blurred vision, and tinea pedis. He has a two-time suicide history, and a history of threatening suicide (Exhibit M).

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must

12

allege:  (1) a serious medical need; and (2) behavior on the part
of prison officials that constitutes deliberate indifference to
that need.   See id. at 106.

As recently explained by the Court of Appeals for the Third
Circuit:

> A medical need qualifies as "serious" for purposes
> of Eighth Amendment analysis if, for example, "it is
> one that has been diagnosed by a physician as requiring
> treatment."  In addition, "if unnecessary and wanton
> infliction of pain results as a consequence of denial
> or delay in the provision of adequate medical care, the
> medical need is of the serious nature contemplated by
> the eighth amendment."  A mental illness may constitute
> a serious medical need. *Inmates of the Allegheny
> County Jail v. Pierce,* 612 F.2d 754, 763 (3d Cir.1979)
> ("Although most challenges to prison medical treatment
> have focused on the alleged deficiencies of medical
> treatment for physical ills, we perceive no reason why
> psychological or psychiatric care should not be held to
> the same standard.").
>
> An inmate can show "deliberate indifference"
> where, for example, "prison authorities deny reasonable
> requests for medical treatment ... and such denial
> exposes the inmate to undue suffering."  Alternatively,
> "deliberate indifference" is shown "where knowledge of
> the need for medical care [is accompanied by the] ...
> intentional refusal to provide that care" or where
> "prison authorities prevent an inmate from receiving
> recommended treatment for serious medical needs or deny
> access to [a] physician capable of evaluating the need
> for such treatment."  It is clear, however, that
> allegations of negligence do not rise to the level of a
> constitutional violation.  Finally, "whether or not a
> defendant's conduct amounts to deliberate indifference
> has been described as a classic issue for the fact
> finder."

Goodrich v. Clinton County Prison, 2007 WL 148688 at *4 (3d Cir.

Jan. 19, 2007)(Slip Copy).

In this case, Plaintiff has alleged facts indicating that he

13

had a serious medical need, and that jail official's refusal to provide him with mental health treatment constituted "deliberate indifference."  Thus, these claims will be permitted to proceed.[3]

**H.  Plaintiff's Conditions of Confinement Claims Will Be Dismissed, Without Prejudice.**

As noted in the "Background" section of this Opinion, Plaintiff alleges numerous violations of his constitutional rights with respect to conditions of confinement.

It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993).  To state a claim for unconstitutional conditions of confinement under the Eighth Amendment, an inmate must allege both an objective and a subjective component. See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346).  This component requires that the deprivation sustained by a prisoner be sufficiently serious,

---

[3]  The Court notes that as Plaintiff has named 40 defendants, the claims involving his medical care concern only certain of those defendants.  Thus, the Court will order service on the following defendants, who Plaintiff claims denied him medical care: Anne Conkin (psychologist, see Complt., pp. 14-17) and Psychologist S. Battle (see Complt., p. 18).

for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. Hudson v. McMillian, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

A plaintiff may satisfy the objective component of a conditions of confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. See Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 349. To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society. See id. at 347. An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate

15

health or safety." Ingalls v. Florio, 968 F. Supp. 193, 198 (D.N.J. 1997).

The Court finds the following allegations of unconstitutional conditions of confinement and other arguments without merit. The claims will be dismissed and Plaintiff will be granted leave to amend. See Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004) (stating that at the pleading stage, a plaintiff need only make out a claim upon which relief can be granted, and that if more facts are necessary to resolve the dispute, the parties may avail themselves of discovery mechanisms).

1. Denial of showers. Plaintiff asserts that he was provided showers but was not provided shower slippers (Complt., pp. 75, 77), then later complains that he was denied showers altogether (Complt., p. 84). Grievance forms attached to the complaint as exhibits provide evidence that Plaintiff was receiving showers (Exhibits G-1A, G-10A, G-15A, G-22A). Regardless, denial of showers does not rise to the level of an Eighth Amendment violation. See Gay v. Shannon, 211 Fed. Appx. 113 (3d Cir. 2006) (unpubl.) (restriction on showers and obtaining toiletries does not rise to level of Eighth Amendment violation).

2.   Clothing and Linens.  Plaintiff asserts his constitutional rights were violated when he was only provided one pair of underwear and one tee-shirt during his stay at MCCI (Complt., p. 76).  Plaintiff does not claim that he was deprived of clothing all together. He disapproves of the amount of underwear he was provided.  He does not claim that he was denied access to laundry or other clothing.  Further, Plaintiff asserts that he was denied the "weekly sheet exchange." (Complt., p. 86).  Plaintiff does not assert that he was deprived of food, shelter, clothing, or sanitation. Thus, Plaintiff was not deprived of a basic human need to rise to the level of an Eighth Amendment claim.

3.   Delay in handling grievances.  Plaintiff does not state that he was deprived of filing a grievance.  Rather, he does not approve of the time frame in which they were handled.  The Court notes that Plaintiff has attached to his complaint as exhibits numerous grievances, which were responded to by jail personnel.  Regardless, prisoners do not have a constitutional right to a grievance process.  See Jackson v. Gordon, 145 Fed. Appx. 774 (3d Cir. 2005)(unpubl.).

4.   Recreation.  "[M]eaningful recreation 'is extremely important to the psychological and physical well-being

17

of the inmates.'" <u>Peterkin v. Jeffes</u>, 855 F.2d 1021, 1031 (3d Cir. 1988)(<u>quoting</u> <u>Spain v. Procunier</u>, 600 F.2d 189, 199 (9th Cir. 1979)); <u>see</u> <u>also</u> <u>Keenan v. Hall</u>, 83 F.3d 1083, 1089 (9th Cir. 1996)("[d]eprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation"). In this case, however, Plaintiff attaches as exhibits to his complaint grievance forms which demonstrate that he has been afforded recreation, just not to the amount of his liking (Exhibits G-49, G-49A, G-53, G-65A). Therefore, he fails to allege facts indicating a violation of his constitutional rights, and this claim must be dismissed.

5.   Denial of Television. Plaintiff complains that he was denied television privileges (Complt., p. 91). Watching television is not a basic human need, therefore, Plaintiff has failed to allege facts indicating a constitutional violation. <u>See</u> <u>Scheanette v. Dretke</u>, 199 Fed. Appx. 336 (5th Cir. 2006) (unpubl.). This claim must be dismissed.

6.   Conducting interviews. Plaintiff, without detail, alleges that he was deprived the ability to conduct interviews (Complt., pp. 88-89). While inmates retain a First Amendment right to free speech, it generally is

18

not unconstitutional to preclude an inmate from face-to-face interviews when other means of communication with the media exist. See Pell v. Procunier, 417 U.S. 817, 828 (1974). Plaintiff's bare allegations offer no facts to indicate a violation of his First Amendment rights, and this claim must be dismissed.

7. Right to religious services. Plaintiff states that he was denied religious services (Complt., pp. 88-89). As he states no facts alleging any support for this claim, the claim must be dismissed.

8. Unsanitary conditions. Plaintiff complains that his cell was dirty and unsanitary (Complt., pp. 73-74, 83-84). Plaintiff grieved this complaint and was informed that the housing area was cleaned daily and that he would be provided cleaning supplies upon his request (Exhibits G-39, G-39A, G-40, G-41). Plaintiff has not alleged facts indicating a violation of his constitutional rights due to unsanitary conditions, and this claim must be dismissed.

9. Special Diet. Plaintiff argues that he was denied a special low-sodium diet (Complt., p. 72). However, according to the exhibits attached to Plaintiff's complaint, he grieved this complaint and jail staff implemented the special diet (Exhibits G-4A, G-5, G-7).

Plaintiff has not alleged facts indicating that he was harmed or placed in harm's way by the delay of receipt of his special diet, nor has he indicated facts sufficient to demonstrate a constitutional violation. Thus, this claim must be dismissed.

I.   **Plaintiff's Claim Regarding Denial of Phone Calls Will Proceed.**

Plaintiff claims he was denied phone use for legal or personal calls from May 19, 2005 through July 2, 2005 (Complt., p. 73).

Inmates must be afforded reasonable access to telephones so as not to infringe the First Amendment or impede meaningful access to the courts in violation of the Fourteenth Amendment. See Inmates of Allegheny County Jail v. Wecht, 565 F. Supp. 1278, 1284 (E.D. Pa. 1983); Owens-El v. Robinson, 442 F. Supp. 1368, 1386 (W.D. Pa. 1978), aff'd in part and vacated in part on other grounds sub nom., Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir. 1979). Nonetheless, inmates' rights to communicate, even with legal counsel, are not unlimited. See Aswegan v. Henry, 981 F.2d 313 (8th Cir. 1992). Prison officials can limit communications, particularly telephone communications, to ensure safety, security, and the orderly operations of their institution. See Griffin-El v. MCI Telecommunications Corp., 835 F. Supp. 1114, 1122-23 (E.D. Mo. 1993), aff'd, 43 F.3d 1476 (8th Cir. 1994).

Numerous and sometimes stringent restrictions on personal telephone calls by inmates have been upheld as constitutional. Most of these restrictions involve limits on the numbers of calls permitted per week, limits on what persons can be called, and time limits on individual calls.  But see Johnson v. Galli, 596 F.Supp. 135 (D. Nev. 1984) (limitation to one call per week, including both personal and legal uses of telephone, unreasonable and in violation of First Amendment).

In this case, Plaintiff alleges facts sufficient to indicate a violation of his constitutional rights, as he states that he was denied legal and personal phone calls for almost two months. Thus, the Court will order defendant Fraser, the warden of the facility, to answer the allegations of the complaint.[4]

## J.  Plaintiff's Claims Regarding Psychological Damage Will Be Dismissed, Without Prejudice.

Without detail, Plaintiff claims that he has been caused to suffer psychological damage.  Apparently one instance cited by Plaintiff concerns an officer who committed animal cruelty outside of Plaintiff's cell window (Complt., pp. 80-81).

Despite Plaintiff's claims of psychological damage, "[n]o Federal civil action may be brought by a prisoner confined in a

---

[4]  As noted, Plaintiff names 40 defendants in this action. It is unclear who Plaintiff suggests has denied him phone calls. The Court will order service on defendant Fraser at this point. If the parties need to be amended at some point, the parties may so move the Court.

jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). As Plaintiff has not asserted any physical injury, his claims for damages for psychological and emotional impairment must be dismissed. <u>See</u> <u>Allah v. Al-Hafeez</u>, 226 F.3d 247, 250-51 (3d Cir. 2000).

### CONCLUSION

Based on the foregoing, Plaintiff's claims regarding lack of medical treatment and denial of telephone use will be permitted to proceed against defendants Fraser, Conkin and Battle. The remainder of Plaintiff's complaint will be dismissed, without prejudice. <u>See Alston</u>, 363 F.3d at 234 n.7 (stating that with a complaint that makes "little sense," District Court could have dismissed complaint without prejudice, to permit Plaintiff to amend the complaint to make it plain). The Court notes that "generally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action." <u>Martin v. Brown</u>, 63 F.3d 1252, 1257-58 (3d Cir. 1995)(quoting <u>Borelli v. City of Reading</u>, 532 F.2d 950, 951 (3d Cir. 1976)). In this case, if Plaintiff can correct the

deficiencies of his complaint, he may file a motion to amend
these claims in accordance with the attached Order.

GARRETT E. BROWN, JR.
Chief Judge
United States District Court

Dated: *May 10, 2007*